UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN E. KLEHFOTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.: 3:09-CV-91 |
| | ) |
| HARTFORD LIFE AND | ) |
| ACCIDENT INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court on the parties' cross motions for summary judgment. Also before the court are motions to strike, one filed by each side. The motions, briefs and supporting documents filed by the parties and considered by the court for purposes of this Opinion and Order are as follows:

1. Motion for Summary Judgment and attached exhibits filed on December 15, 2009, by defendant Hartford Life and Accident Insurance Company ("defendant" or "Hartford") (docket at 31);

2. Defendant's Memorandum in Support of Motion for Summary Judgment (docket at 32);

3. Motion for Summary Judgment filed on December 15, 2009, by plaintiff John E. Klehfoth ("plaintiff" or "Klehfoth") (docket at 33);

4. Brief in Support of Plaintiff's Motion for Summary Judgment and attached exhibits (docket at 34);

5. Plaintiff's Appendix, Statement of Material Facts and Designation of Evidence (docket at 35);

6. Motion to Strike Portions of Affidavit of Juan Mendez filed on December 30, 2009, by plaintiff (docket at 37);

7. Defendant's Response in Opposition to Motion to Strike filed on January 18, 2010 (docket at 40);

8. Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment filed on January 25, 2010 (docket at 43);

9. Defendant's Statement in Response to Plaintiff's Statement of Material Facts (docket at 44);

10. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (docket at 45);

11. Plaintiff's Reply to Defendant's Motion to Strike filed on January 28, 2010 (docket at 49);

12. Defendant's Motion to Strike the Affidavit of Joseph Eapen, M.D., filed on February 11, 2010 (docket at 50);

13. Plaintiff's Reply Brief in Support of Motion for Summary Judgment filed on February 11, 2010 (docket at 51);

14. Defendant's Reply Brief in Support of Motion for Summary Judgment (docket at 52);

15. Defendant's Statement–Reply to Plaintiff's Statement of Genuine Issues (docket at 53);

16. Plaintiff's Brief in Opposition to Defendant's Motion to Strike filed on March 1, 2010 (docket at 54); and

17. Defendant's Reply to Plaintiff's Motion to Strike filed on March 11, 2010 (docket at 55).[1]

For the reasons discussed below, defendant's motion for summary judgment is DENIED; plaintiff's motion for summary judgment is DENIED; plaintiff's motion to strike is DENIED; and defendant's motion to strike is DENIED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[1] The parties in this case entered into a Stipulated Protective Order and Confidentiality Agreement, which the court approved on September 25, 2009. *See* docket at 24. As a result, several of the briefs filed by each side were filed in both redacted and unredacted versions, with the unredacted versions filed under seal. The court has considered all the pleadings in arriving at its decision on the pending motions, although the redacted portions of the briefs are not referenced or cited in this Opinion and Order.

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to

support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

## DISCUSSION

**1. Defendant's Motion for Summary Judgment.**

Notwithstanding the voluminous pleadings and exhibits submitted by both sides in this case, the predominant issue in this case is straightforward. This is an action brought under ERISA, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* The plaintiff, Klehfoth, was employed as a vice president and senior fiduciary officer at JP Morgan Chase Bank from 1976 and last worked in that capacity on September 4, 2007. Near the end of his tenure at JP Morgan Chase, Klehfoth experienced health problems, the primary one being (according to him and disputed by Hartford) fibromyalgia syndrome. Klehfoth claims that "[a]s a result of his battle with the fibromyalgia syndrome, John has experienced persistent and debilitating pain. Due to John's chronic fibromyalgia, John's quality of life and level of functioning have been profoundly affected, and he was unable to continue in his position . . . at JP Morgan Chase Bank." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Brief in Opposition"), p. 1. Consequently, Klehfoth applied for long-term disability benefits through his company. He had previously applied for, and received, short-term disability benefits. Defendant Hartford was the plan administrator of JP Morgan's long-term

4

disability benefit plan, which the parties do not dispute was an ERISA plan. After reviewing Klehfoth's request for benefits, Hartford concluded that the medical evidence did not support his claim and denied him long-term disability benefits. Klehfoth appealed that decision but Hartford determined that its initial denial of benefits was proper. By way of this lawsuit, Klehfoth seeks judicial review of Hartford's denial of benefits.

In its motion for summary judgment, Hartford argues that its denial of Klehfoth's request for long-term disability benefits was proper and that it is entitled to summary judgment on Klehfoth's ERISA claim. In his motion, Klehfoth argues that Hartford's denial of his request was arbitrary and capricious and he is the party entitled to summary judgment. At the very least, contends Klehfoth, there are genuine issues of material fact that preclude the entry of summary judgment in favor of Hartford and necessitate a trial.

About the only thing the parties agree on at this point in this case is the applicable standard of review. In addition to the summary judgment standard of review set forth above, a court reviewing an ERISA administrator's denial of a claim for benefits must do so under the arbitrary and capricious standard. Hartford states that because it had "express discretionary authority to determine eligibility for benefits and to interpret the terms of the Plan[.] . . .[t]his Court . . . must apply the deferential review standard and uphold The Hartford's decision unless it was arbitrary and capricious." Defendant's Memorandum, p. 5 (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). Hartford points out that its "decision must be upheld so long as there was a 'rational connection' between the evidence and the conclusion, and reversal is allowed only upon a showing that no 'reasonable explanation' for the decision exists." *Id*. (quoting *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107-09 (7th Cir. 1998)). Those

are correct statements of the law. However, it is also true that "deferential review is not a euphemism for a rubber-stamp." *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 483-84 (7th Cir. 2009). Notwithstanding the deferential standard of review and the difficult burden it places on a plaintiff, an ERISA plan administrator's decision to deny benefits is not automatically upheld where, for example, the administrator dismisses certain evidence submitted by the plaintiff without adequate explanation or there the plan administrator did not afford "the claimant 'an opportunity for full and fair review.'" *Id*. (quoting *Leger v. Tribune Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 832-33 (7th Cir. 2009)).

In the present case, Hartford insists that its decision to deny benefits to Klehfoth was made after a full and detailed review of the medical evidence the company obtained. More specifically, Hartford explains that Klehfoth "was required to provide proof of loss, including the date of disability, cause of disability, and evidence of Regular Care of a Physician.[2] Plaintiff was to provide completed attending physician forms." Defendant's Memorandum, p. 7. Hartford points out, and Klehfoth does not dispute, that these requirements were specifically spelled out in the company's Long Term Disability ("LTD") Plan. Hartford bases its motion for summary judgment on its contention that Klehfoth failed to present sufficient evidence to support his claim of disability and that he failed to present evidence that he received regular care from a physician or physicians consistent with his claimed disability. *Id*., generally.

Klehfoth responds by claiming that Hartford's "decision to deny [his] claim for disability benefits was arbitrary and capricious in the face of the undisputed objective and subjective

---

[2] Hartford explains that "Regular Care of a Physician" is a term of art meaning "treatment consistent with the diagnosis of the condition, according to established guidelines, and administered as often as necessary." Defendant's Memorandum, p. 7, n. 3.

6

medical evidence before it, and absent from the record is any reliable substantive medical evidence which supports the Defendant's adverse benefits determination." Plaintiff's Response in Opposition, p. 2. Klehfoth also insists that Hartford "inexcusably failed to provide [him] with a description of any additional medical information necessary to perfect his disability claim, despite controlling ERISA regulations expressly requiring such disclosure." *Id*. Finally, Klehfoth maintains that Hartford based its decision on medical reports provided by its own "independent medical consultants" and that the company failed to provide him with "an opportunity to respond to the reports . . . prior to the issuance of the Defendant's final denial of benefits . . ." *Id*. So Klehfoth's argument is twofold: first, he claims Hartford ignored reliable medical evidence supporting his claim; second, he claims he was denied a full and fair review as required by ERISA because the company did not explain to him what evidence he needed to submit and denied him a fair opportunity to respond to evidence that was adverse to him.

Hartford explains its decision to deny Klehfoth's claim for LTD benefits in specific detail, which the court will now summarize in a more general fashion. Klehfoth applied for LTD benefits on February 26, 2008, about a week before his Short Term Disability ("STD") benefits offered through J.P. Morgan Chase were scheduled to expire. Defendant's Memorandum, p. 8. Included in the records Klehfoth submitted in support of his LTD claim were medical records from Drs. Lockwitz and Mohr, both rheumatologists. *Id*., p. 9. According to Hartford, Dr. Lockwitz examined Klehfoth on June 14, 2007, and concluded that "'[h]is exam today was really unremarkable,' and that he 'did not find any evidence for fibromyalgia nor did he have any objective synovitis or joint deformities.'" *Id*. (citing Defendant's Designation of Evidence, document 31-7, June 14, 2007 Letter from B.A. Lockwitz, M.D.). Dr. Lockwitz concluded as

7

follows:

> "I am not sure we are going to find a great organic or physiologic explanation for all of his complaints. How much of this is just related to the tincture of time and extra stress with his last child going off to college this fall is uncertain. I will undertake several evaluations to make sure we are not missing cortisolism. We will also check for myositis, parvovirus, and a collagen vascular workup. This would be mainly with serologies. I will do a bone scan looking for any evidence of inflammatory joint disease. I am not overly optimistic that these will be overly helpful, other than to rule out several more items.

*Id*. Dr. Lockwitz followed up with another letter about a month later, in which he related the following information:

> I am writing in regard in followup to Mr. John Klehfoth. This is a gentleman who had a positive ANA, along with a very weakly positive RNP. This may represent early mixed connective tissue disease. He is quite incapacitated by this because of tendonitis and arthritis involving especially his right hand and foot, along with severe inordinate fatigue.
> . . .
> I carefully explained that this is probably not the explanation for his other symptoms of dizziness and poor memory, and I know Dr. Naeem is seeing him for possible sleep apnea, which also may contribute to his fatigue.

*Id*. (July 17, 2007 Letter from Lockwitz).

About one month later, on August 13, 2007, Klehfoth began treating with Dr. Brent Mohr to get another opinion. After conducting a physical examination and reviewing "several pages of records," Dr. Mohr reached the following conclusions regarding Klehfoth's ailments: "His examination is unremarkable. I am very suspect of the significance of the ANA of 1 to 320 and at this time do not feel that he is manifesting specific symptomatology of an autoimmune disease." *Id*. (Document 31-5, August 22, 2007 Report From Mohr). Dr. Mohr also stated that in his opinion Klehfoth's symptoms were not related to connective tissue disease. *Id*. However, Dr. Mohr also wrote in his report that Klehfoth "is prone to some anxiety, and I would wonder whether some of his symptomatology might not be related to fibromyalgia." *Id*. Finally, Dr.

8

Mohr also stated that "I suppose rheumatoid arthritis would also be possible . . ." *Id.*

Also in August of 2007, Klehfoth saw Dr. Joseph Eapen, an internist, who examined him and concluded that he was suffering from hypogonadism, a condition caused by the body's failure to produce a sufficient amount of testosterone. *Id.* (document 31-6, Report of Dr. Eapen). In his report, Dr. Eapen stated that Klehfoth would be unable to work, as a result of medical problems, between September 5, 2007 and October 10, 2007. *Id.* Dr. Eapen's report did not make any mention of fibromyalgia. *Id.*

Next, Klehfoth went to the Mayo Clinic, where he was seen by physicians in October and November 2007. At the Mayo Clinic, Klehfoth did, in fact, receive a diagnosis of fibromyalgia. *Id.* (documents 31-5, 31-8, 31-9). All of the reports from the doctors at the Mayo Clinic state conclusively that Klehfoth was diagnosed with fibromyalgia, chronic pain syndrome, and chronic fatigue syndrome. *Id.* (document 31-9, November 5, 2007 Report From Mayo Clinic). Klehfoth was admitted to the Mayo Clinic's Fibromyalgia Treatment Program. *Id.* He was also diagnosed as suffering from sleep disturbances, "positive nonorgan specific autoantibodies," and "endocrinologic abnormalities." *Id.*

Shortly after Klehfoth was diagnosed at Mayo Clinic, Dr. Eapen (Klehfoth's internist) and Dr. Cyprian Gardine (an endocrinologist at The South Bend Clinic) jointly authored a letter to the J.P. Morgan Chase Short-Term Disability Management Department. This letter, written on November 8, 2007, included the following observations and conclusions:

> In trying to help John find answers, I ordered lab tests on his testosterone level, which showed it was at 90, a level one-sixth the normal level. While this extremely low testosterone level did contribute significantly to his impairments and could be adjusted with [medication] . . . it became apparent in frequent follow up office visits that this treatment was not resolving the issues of pain and memory loss. These issues continued to worsen. In addition, John was taking

> Vicodin for increasing physical pain and had become unable to do simple physical activities such as walking any distance or driving.
>
> The increased pain and muscle aches also resulted in great fatigue, which made it physically impossible for John to move, stand or do strenuous activity for any period of time.
>
> From October 30, 2007 through November 6, 2007, John was at the Mayo Clinic meeting with a Neurologist, Endocrinologist, Immunologist and experts at the Mayo Fybromyalgia Treatment Program. Each of these experts conducted a variety of blood tests and studies and determined conclusively that John has fibromyalgia, a chronic and debilitating condition which not only causes great fatigue, but also muscle pain and weakness throughout the body, mind "fog" which impairs short term memory and the ability to concentrate. In addition, John has Vitamin D deficiency.
>
> . . .
>
> While we are hopeful that John's condition will stabilize and his condition will be able to be managed effectively with treatment, we know that he is, at present, unable to function at a minimal level requiring walking, sitting or thinking for any consistent period of time.

*Id*. (document 31-6, November 8, 2007 Letter from Drs. Eapen and Gardine). About one month later, Dr. David Knopman wrote a letter to Klehfoth in which he stated that Klehfoth "should continue your disability leave at least until January 15, 2008, in order to make more recovery. I hope that you can work with your employer to eventually go back to work and resume your productive career." *Id*. (December 4, 2007 Letter From Knopman to Klehfoth).

Hartford acknowledges these medical records and the diagnoses from the Mayo Clinic and also acknowledges that they provided much of the basis for Klehfoth's award of short-term disability benefits. However, Hartford also states that Klehfoth "failed to complete his treatment at Mayo Clinic by missing . . . scheduled appointments in 2007 and on November 9, 21, and 27."

10

Defendant's Memorandum, p. 10.³ Hartford points out that Klehfoth's treatment at Mayo Clinic ended as of February 13, 2008 and that he "was expected to return to work and was advised to 'follow-up with primary care physician as needed.'" *Id.*, p. 11 (quoting document 31-7, Mayo Clinic Dismissal Summary). Klehfoth was also advised to "[f]ollow-up with cognitive behavioral counseling to help manage ongoing chronic pain symptoms and mood issues." *Id*. Despite this advice, Hartford claims that Klehfoth "did not participate in any cognitive counseling or other treatment for any alleged mental health issues[.]" and that "he did not seek treatment from his primary care physician or any specialist **until after his LTD claim was denied**." *Id.*, p. 11 (boldface in original).

Hartford next asserts that "[o]n the very same day on which his claim was submitted (February 26, 2008), The Hartford sent Plaintiff a letter informing him that he needed to submit an Attending Physician's Statement ("APS") from the physician(s) supporting his disability as well as a claimant questionnaire." *Id.*, p. 12. Hartford claims that Klehfoth submitted the questionnaire but that he "did not provide the APS." *Id*. The next several pages of Hartford's memorandum in support of its motion for summary judgment address the company's own efforts–which it implies were detailed and persistent–to obtain information from doctors that supported Klehfoth's claim that we was unable to perform his job. *Id.*, pp. 14-17. Hartford then claims that "despite lack of any treating physician certifying disability, The Hartford review[ed] [Klehfoth's] claim on [its] merits." *Id.*, p. 16. Obviously, the outcome of that review was to

---

³ In support of this allegation that Klehfoth failed to appear for several of his appointments at Mayo Clinic, Hartford cited to documents 31-5 and 31-9. However, these documents do not appear to contain any information about missed appointments. But this discrepancy is not material to the court's conclusion.

11

deny Klehfoth's LTD claim.

Hartford next explains that it went through what it characterizes as a thorough review of Klehfoth's claim before denying him LTD benefits and did so because there was allegedly no medical evidence to support Klehfoth's claim that he was disabled after he was discharged from Mayo Clinic. Defendant's Memorandum, p. 16 *et seq.* Hartford states that one of its own nurses, Patricia Laberge, "reviewed all of the medical information in the file. . . . Nurse Laberge noted that there was no medical information beyond Plaintiff's discharge from Mayo Clinic on February 13, 2008 and no physician imposed restrictions or limitations past January 15, 2008." *Id*., p. 16. Laberge concluded that "there was no medical evidence to support physical impairment beyond February 14, 2008." *Id*.[4] Based on Laberge's review and the fact that Klehfoth had not provided Hartford with an Attending Physician's Statement by May 23, 2008, Hartford sent Klehfoth a letter dated June 3, 2008, informing him of the company's decision to deny him LTD benefits. *Id*., p. 17 (citing document 31-5, Letter From Hartford to Klehfoth).

---

[4] This conclusion by the Hartford's own nurse is curious. Following the letters from Drs. Eapen, Gardine and Knopman, Laberge's conclusion that there was no medical evidence of any impairment beyond the date of Klehfoth's discharge from Mayo Clinic (February 13, 2008) is dubious. Eapen and Gardine concluded that Klehfoth was, at least as of November 8, 2007, unable to engage in even the most minimal physical and mental activities. Furthermore, Eapen and Gardine stated in their letter to Hartford that they were "hopeful that John's condition will stabilize . . ." although they did not offer any time frame in which this might occur. Defendant's Designation of Evidence (document 31-6, November 8, 2007 Letter from Drs. Eapen and Gardine). Also, Dr. Knopman's letter of December 4, 2007, while it did indeed state that Klehfoth should remain off work until January 15, 2008, did *not* state that Klehfoth's medical problems would be resolved as of that date. In fact, what Knopman wrote was that Klehfoth should remain off work "*at least* until January 15, 2008, in order to make more recovery." *Id*. (italics added). Knopman also stated that he "hope[d]" that Klehfoth would eventually be able to resume his career. The court does not believe that these conclusions by the doctors who examined and treated Klehfoth support Laberge's conclusion that Klehfoth had no physical or mental impairments beyond February 13, 2008.

Hartford concludes by stating that "the administrative record is devoid of any evidence of medical treatment from February 14, 2008 until July 23, 2008." *Id*. As a result, Hartford denied Klehfoth's claim for LTD benefits.

Interestingly, Hartford admits that it received a letter from Dr. Eapen dated May 29, 2008, in which Dr. Eapen concluded that Klehfoth's physical and mental impairments rendered him "unable to perform at full capacity on a full time basis." *Id*. (document 31-5, May 29, 2008 Letter From Dr. Eapen to Hartford). However, Hartford apparently placed little or no stock in this letter, claiming that Dr. Eapen's conclusion "was based upon the incorrect belief that Plaintiff's treatment at Mayo Clinic was not successful." *Id*., p. 17. The court notes that while Hartford is correct when it asserts that Klehfoth failed to submit an APS by the May 23, 2008 deadline Hartford imposed, the letter from Dr. Eapen was received approximately one week later and several days before Hartford ultimately decided to deny Klehfoth's claim for LTD benefits. It would appear, then, that Hartford's assertion that Klehfoth failed to follow the company's instructions to provide an APS, and that this failure figured into the decision to deny him benefits, is somewhat disingenuous.

Next, Hartford discusses at length the additional review process it conducted after Klehfoth filed an appeal of the denial of his LTD benefit claim. Defendant's Memorandum, pp. 17-21. This review process consisted of a review of Klehfoth's entire file by Juan Mendez, an employee in Hartford's appeal unit, which the company points out "is a separate unit charged with the task of conducting a full and fair . . . *de novo* review of claims that have been denied by the long term disability claims department on its initial review." *Id*., p. 22. In addition to a review of the file by Mendez, Hartford explains that the file was subject to review by "peer

13

reviewers." *Id.*, p. 19. These peer reviewers included Dr. Mark Burns, a board certified physician of internal medicine, and Dr. Michael Rater, a board certified psychiatrist. *Id.* According to Hartford, each of these physicians undertook an independent review of Klehfoth's file and concluded that Klehfoth was not suffering from a long-term disability that would prevent him from working. *Id.* More specifically, Dr. Rater concluded that Klehfoth "had no psychiatric restrictions or limitations related to his job as of March 5, 2008 and beyond." *Id.*, p. 20 (citing document 31-4, December 24, 2008 Letter from Rater to Hartford). Dr. Burns "concluded that there were no restrictions and/or limitations in Plaintiff's work capacity . . . from a physical condition." *Id.* While Hartford readily acknowledges that Klehfoth had received a diagnosis of fibromyalgia, the company argues that "Dr. Burns opined that there were no documented or demonstrated physical impairments that would have precluded Plaintiff from working full time." *Id.*, p. 21. Based on these reviews by Mendez, Dr. Rater and Dr. Burns, Hartford found against Klehfoth in his appeal and informed him of that decision "by letter dated January 15, 2009." *Id.* Based on these facts, Hartford maintains it is entitled to judgment as a matter of law in this case since its decision to deny Klehfoth LTD benefits was based on what it claims was the clear medical evidence it had before it. Furthermore, Hartford argues that Klehfoth "[s]hould have and would have sought additional treatment, if necessary, per his doctor's orders. However, even if he did not want to seek additional care and treatment, he was **required** to obtain regular and continuing care of a physician under the terms of the [Long Term Disability] Policy if he claimed that he was totally disabled from his occupation. . . . Plaintiff's failure to receive regular and continuing care was not only indicative of the lack of a significant medical problem, but it was also an independent and appropriate basis for denying Plaintiff's claim." *Id.*, p. 26 (boldface

14

in original).

In light of the voluminous medical records available to Hartford when it reviewed Klehfoth's claims, and the clear conclusions by several physicians, including those at the Mayo Clinic Fibromyalgia Program, that Klehfoth was suffering from debilitating pain and cognitive problems, at least as late as December of 2007 and arguably into 2008, it strains credulity when Hartford states that it denied Klehfoth's LTD claim based on its own nurse's conclusion that Klehfoth was no longer disabled and the conclusions by Drs. Rater and Burns (neither of whom ever examined or treated Klehfoth) that Klehfoth was not suffering from any condition that would prevent him from resuming his full time employment. These three individuals, along with Mendez (who is not a nurse or a physician), all of whom were employed by or retained by Hartford, concluded that Klehfoth was no longer disabled and/or that he was not suffering from any medical condition that prohibited him from performing his demanding full-time job with J.P. Morgan Chase. These conclusions are questionable in that they seem to fly in the face of a tremendous amount of medical evidence that appears to support Klehfoth's assertion that he was suffering from debilitating conditions and was unable to return to the demands of his former successful career. The court concludes that the Hartford's ultimate conclusion to deny Klehfoth's claim (i.e., nurse Laberge's conclusion) and its decision to deny Klehfoth's appeal (i.e., Rater and Burns's conclusions) doesn't pass the proverbial "smell test." After months and months of medical exams, medical tests, and various treatments by many doctors, it was determined that Klehfoth suffered from fibromyalgia and other physical problems. These medical conditions prevented him from performing his job and he was granted short-term disability benefits. Then, when the time came for Hartford to make a determination regarding

15

Klehfoth's claim for LTD benefits, the company concludes in 2008 that Klehfoth is no longer disabled, based on what it claims is a lack of any medical evidence that any disability continued beyond about March of 2008, and Klehfoth's alleged failure to obtain any regular follow-up medical care once he was discharged from Mayo Clinic in February of 2008. What the court finds troubling about this scenario is that Hartford fails to adequately explain why the voluminous medical evidence–including explicit diagnoses by physician's whose expertise Hartford does not challenge–suddenly lost all of its apparent significance by the time Laberge, Mendez, and Drs. Rater and Burns conducted their reviews and made their conclusions. A company's failure to adequately explain its decision to ignore or not evaluate certain medical evidence when making a determination of whether to award benefits under and ERISA plan is one basis for a court to find that the company's decision was arbitrary and capricious. *See, e.g., Leger v. Tribune Co.*, 557 F.3d 823. In this particular case, the facts and evidence presented not only support Klehfoth's argument that Hartford's decision was arbitrary and capricious, they also beg the question whether Hartford was actively looking for a reason to deny Klehfoth's claim. The court has no opinion about this either way. However, it presents a genuine issue of material fact that can be resolved only following a trial, when issues of credibility (i.e., the reasoning of those individuals involved in the denial of Klehfoth's claim for LTD benefits) can be assessed properly and when the record can be fully develop beyond the state of pending motions for summary judgment.

    The court's conclusion to deny Hartford's motion for summary judgment is based on two premises. The first is the fact that Hartford appears to have had voluminous medical records and statements from physicians indicating that Klehfoth suffered from a debilitating medical

condition or conditions, as explained above. The second is the fact that in his response to Hartford's motion for summary judgment, Klehfoth presents evidence that he did, in fact, seek medical care and/or treatment for his various ailments even before his claim for LTD benefits was denied. This evidence conflicts with Hartford's position that he failed to seek continuing treatment until after his claim was denied. According to Klehfoth, Hartford's contention that he did not seek follow up care and treatment after he was discharged from Mayo Clinic is a misrepresentation. Plaintiff's Response in Opposition, p. 4. Klehfoth contends that "[t]hroughout 2008, John sought and received ongoing and continuous treatment from his attending physician, Dr. Eapen, in connection with his diagnoses of fibromyalgia, depression and anxiety. . . . In fact, since John's discharge from the Mayo Clinic on February 13, 2008, Dr. Eapen personally attended to and treated John during office visits on February 26, 2008; March 25, 2008; May 16, 2008; July 16, 2008; October 20, 2008; January 20, 2009; May 4, 2009; June 30, 2009; and October 22, 2009." *Id*. (citing Affidavit of Joseph Eapen, M.D., document 45-4). Klehfoth also contends that he received medical treatment from "Dr. Susan E. Park of the South Bend Clinic . . . during office visits on April 25, 2008; October 14, 2008; and April 29, 2009." *Id*. Klehfoth further asserts that he "was attended to and received treatment from Dr. David A. Beatty, Dr. Michael F. Grantham and/or Dr. Craig W. Erekson . . ." on 14 different occasions. *Id*. (citing Declaration and Certification of Records Custodian of OSMC, document 45-5).[5] Thus, a genuine issue of material fact exists since the parties present conflicting evidence concerning Klehfoth's ongoing and continuing treatment. For these reasons, Hartford's motion

---

[5] "OSMC" is an acronym for the Orthopedic and Sports Medicine Center in Elkhart, Indiana. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment, document 45-5.

for summary judgment must be denied.

**2. Plaintiff's Motion for Summary Judgment.**

In his own motion for summary judgment, Klehfoth essentially restates his position that he has sufficient evidence to establish that Hartford's denial of his claim for LTD benefits was arbitrary and capricious. Brief in Support of Plaintiff's Motion for Summary Judgment, docket at 35, generally. Klehfoth repeats his contentions that the medical evidence in this case supports his claim that he was entitled to LTD benefits and that Hartford's decision to deny those benefits was arbitrary and capricious. The court concludes, however, that Klehfoth's motion for summary judgment must be denied for essentially the same reasons Hartford's motion was denied. That is, the evidence in this case, at least on the record as it stands presently, presents genuine issues of material fact that can be resolved only following a trial. The ultimate issue–whether Hartford's decision was arbitrary and capricious–can only be resolved when the record is more fully developed and the court is able to hear and assess the testimony of witnesses. This includes not only Klehfoth himself, but also the testimony of those individuals who were responsible for the decision to deny his claim for LTD benefits. The testimony of many of the medical providers who examined and treated Klehfoth also may be essential in determining whether Hartford properly, adequately, and thoroughly assessed Klehfoth's claim. In other words, the evidence before the court at the present time presents genuine issues of material fact but it is insufficient to provide a basis for conclusively granting either side's motion for summary judgment. Accordingly, Klehfoth's motion for summary judgment is DENIED.

**3. Plaintiff's Motion to Strike.**

Klehfoth moves the court to "strike paragraphs 6, 7, 12, 14, 15, and 16 of [the] affidavit

18

of Juan M. Mendez." Plaintiff's Motion to Strike, docket at 37, p. 1. Klehfoth argues that these portions of Mendez's affidavit "are conclusory allegations which suffer from a fatal lack of foundation and which constitute inadmissible speculation." *Id.*, p. 5. Mendez, of course, was one of the individuals who reviewed Klehfoth's claim for LTD benefits and was instrumental in the denial of that claim. Mendez's affidavit was presented by Hartford in support of its motion for summary judgment. However, given the court's decision to deny that motion, even after having considered Mendez's affidavit along with all the other evidence presented by Hartford, Klehfoth's objections are rendered moot and his Motion to Strike will be denied for that reason.

**4. Defendant's Motion to Strike.**

Hartford moves the court to strike the affidavit of Dr. Eapen and the affidavit of the custodian of records at the OSMC. Defendant's Motion to Strike, docket at 50, p. 1. Hartford argues that these documents should be stricken because there "were not part of the agreed administrative record in this ERISA lawsuit." *Id*. Hartford further argues that "[u]nder the deferential arbitrary and capricious standard of review, the scope of judicial review is limited to the evidence that was before The Hartford at the time of its final decision." *Id.*, p. 2 (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999)). In response, Klehfoth argues that he presented this evidence in response to Hartford's contention that he did not seek or receive continuing medical treatment until *after* his claim for LTD benefits was denied. Plaintiff's Brief in Opposition to Defendant's Motion to Strike, docket at 54, p. 2. In any event, the real issue with regard to this evidence is the weight, if any, to be given to the evidence rather than its admissibility. If in fact this evidence was not provided to Hartford or available to Hartford at the time the final decision was made, that fact

19

works in Hartford's favor. But for purposes of the present cross motions for summary judgment, the evidence is relevant since it serves to rebut one of the defendant's essential assertions, thereby creating a genuine issue of material fact for trial. Also, the court has already concluded that genuine issues of material fact exist with regard to Hartford's decision to deny Klehfoth's claim for LTD benefits based on the medical evidence the company had before it even without this alleged "new" evidence. For these reasons, Hartford's motion to strike is DENIED.[6]

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is DENIED; plaintiff's motion for summary judgment is DENIED; plaintiff's motion to strike is DENIED; and defendant's motion to strike is DENIED.

Date: June 22, 2010.

      /s/ William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana

---

[6] Obviously, Klehfoth and Hartford may seek to preclude the evidence they each seek to strike by way of motions in limine filed prior to trial. By way of a separate docket entry, the court will set a telephonic status and scheduling conference in this case to schedule further proceedings, including a trial date.